UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 2:09-CR-31 |
| ) | JUDGE JORDAN |
| AMEKA BREWER ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Ameka Brewer, and the defendant's attorney, Donny M. Young, have agreed upon the following:

1. The defendant will plead guilty to the following count in the superseding indictment:

   a) Count 70, that is, conspiracy to conduct and attempt to conduct a financial transaction affecting interstate commerce, in violation of Title 18, United States Code, Section 1956(h).

   The punishment for this offense is as follows: a term of imprisonment of not more than twenty years, a fine of $500,000.00 or twice the value of the monetary instruments involved in the transfers, whichever is greater, a term of supervised release of not more than three years, and a mandatory assessment of $100.00.

2. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in the superseding indictment.

3. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum;
    b) The Court will impose a special assessment fee as required by law; and
    c) The Court may order forfeiture as applicable and restitution as appropriate.

4. The defendant has read the superseding indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged. The defendant is pleading guilty because the defendant is in fact guilty. In order to be guilty of Count 70 of the Superseding Indictment, the defendant agrees that each of the following elements of the crimes must be proved beyond a reasonable doubt: The defendant (1) did combine, conspire, confederate, and agree with at least one other person to conduct and attempt to conduct a financial transaction affecting interstate commerce and/or foreign commerce; (2) that the defendant knowingly, intentionally, and without authority joined the conspiracy to conduct and attempt to conduct a financial transaction affecting interstate commerce and/or foreign commerce; (3) the defendant knew that the conspiracy involved a transaction involving the proceeds of a specified illegal activity which was intended to promote the specified illegal activity; and (4) the defendant intended to participate and to further the conspiracy.

5. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and

2

the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

  a) Through the testimony of several witnesses, to include co-conspirators, the United States would demonstrate, beyond a reasonable doubt, that from approximately the month of January 2006, and continuing to in or about April 2009, in the Eastern District of Tennessee, and elsewhere, the defendant did knowingly, intentionally, and without authority, conspire with at least one other person to conduct and attempt to conduct financial transactions affecting interstate commerce, in violation of Title 18, United States Code, Section 1956(h).

  b) In furtherance of the conspiracy, the defendant opened and maintained numerous bank accounts at the direction of co-defendant Andrew Montgomery for the purpose of conducting financial transactions involving the proceeds of specified illegal activities (drug trafficking proceeds of the Montgomery drug organization).

  c) The defendant opened Sun Trust bank account #0198 in the name of Certified Title Company on May 18, 2007 at the direction of Montgomery. The defendant had sole signatory control over the account until it was closed in October 2007. Certified Title Company was a fictitious company and this account was used to launder Montgomery's drug proceeds. During the approximate six months that this account was open, approximately $71,556.00 in deposits were made into the account, all in cash with the exception of $110.00. Of the total cash deposited, over $63,000.00 was withdrawn in cash. In September 2007 alone, $50,000.00 in cash was deposited and withdrawn from the account of this fictitious company.

d) At the direction of Montgomery, a confidential informant working for law enforcement deposited proceeds from unlawful activity (drug trafficking) into Sun Trust account # 0198 (Certified Title Company) on at least five occasions. Also, at Montgomery's direction, the defendant withdrew the money deposited by the informant. First, on March 31, 2007, the informant deposited $4,000.00 representing drug proceeds into the account from Morristown, Tennessee. The defendant withdrew over $4,000.00 from the account on the very same day in Atlanta, Georgia. Second, on September 10, 2007, the informant deposited $8,000.00 representing drug proceeds into the account from Morristown, Tennessee. The defendant withdrew $8,000.00 in cash from the account three days before that and withdrew another $7,500.00 in cash two days later on September 12, 2007 in Atlanta, Georgia. Third, on September 13, 2007, the informant deposited $3,600.00 representing drug proceeds into the account from Morristown, Tennessee. The defendant withdrew $3,500.00 in cash on the very same day in Atlanta, Georgia. Fourth, on September 14, 2007, the informant deposited $5,400.00 in cash representing drug proceeds into the account from Morristown, Tennessee. The defendant withdrew $5,390.00 in cash on the very same day in Atlanta, Georgia. Fifth, on September 18, 2007, the informant deposited $5,000.00 representing drug proceeds into the account from Morristown, Tennessee. The defendant withdrew $4,000.00 in cash on the very same day in Atlanta, Georgia.

e) The defendant also opened Wachovia bank account # 2929 in January 2007 and maintained the account for Montgomery until January 2008. During this time period, $12,711.09 was deposited into the account. Over $11,000.00 of this amount was in cash. Almost $7,400.00 was withdrawn from the account and was used to pay for car rentals

4

for Montgomery and his drug organization to travel back and forth between Atlanta and Morristown. Montgomery used rental cars as a preferred means of transportation to and from Atlanta and Morristown to distribute drugs.

f) The defendant also opened Bank of America account #4481 in January 2006 and maintained it for Montgomery through September 2006. $5,400.00 was used from this account to pay for rental cars for Montgomery and his associates. Additionally, a $23,000.00 transfer from a separate Bank of America account was received on May 18, 2006. The defendant withdrew $9,500.00 on May 20, 2006 and another $9,500.00 on May 22, 2006 at Montgomery's direction. These funds represented proceeds from unlawful activity, being money from Montgomery's drug organization.

g) The defendant also opened Sun Trust bank account # 7556 and used it from July 2007 through August 2007 for Montgomery. During this time period, $2,900.00 was deposited in cash and withdrawn again as cash almost immediately. These funds represented proceeds from unlawful activity, being money from Montgomery's drug organization.

h) The defendant also opened Bank of America account # 5994 in September 2005. The defendant had sole signatory control over the account in trust for a minor child, Derekia Brown. There was no activity in the account until May 2006 when the defendant began to launder drug proceeds, again at the direction of Montgomery. On February 28, 2007, a $21,000.00 deposit was received from a company called American Salvage in Reno, Nevada. Current management of the company states that the person that wired the money to the defendant's account has been fired primarily because he was a drug dealer. After receiving this deposit, at Montgomery's direction, the defendant began withdrawing cash at

5

many different Bank of America branches around the Atlanta, Georgia area. For example, on March 2, 2007, the defendant withdrew $4,500.00 in cash and $3,500.00 from two different Bank of America branches in the Atlanta area. Over the next week, the defendant withdrew another approximate $10,000.00 spread out over three different dates and three different Bank of America branch banks. The defendant also received a wire transfer into the account from a purported company in New York named Alliance Title in the amount of $35,000.00 on October 5, 2007. Alliance Title Company is also a fictitious company that is unregistered in New York. Investigation into this wire transfer revealed that the person that sent the transfer to the defendant had previously served time on a murder charge. Within a few days of receiving the $35,000.00 wire transfer, at the direction of Montgomery, the defendant withdrew $32,000.00 during a period of 11 days at numerous different Bank of America branches. All of the withdrawals were under $10,000.00.

  i)  On or about August 20, 2007, Montgomery was pulled over by a law enforcement officer in or around Loudon County, Tennessee while driving a rental car rented by the defendant. Approximately $17,000.00 in cash was located inside the rental car with Montgomery. This amount of currency also represented drug proceeds that Montgomery was taking back to Atlanta. A forfeiture hearing was subsequently set in Loudon County regarding the $17,000.00. Montgomery instructed the defendant to lie and testify that the money really belonged to her. The defendant reluctantly agreed to appear in court and testify untruthfully for Montgomery. On the date of the hearing, the defendant testified that it was her money to pay a lawyer for a friend, per the direction of Montgomery. After hearing evidence on the matter, including the defendant's testimony, the $17,000.00 was forfeited.

  6.  The defendant understands that by pleading guilty the defendant is giving

Case 2:09-cr-00031   Document 440   Filed 03/04/10   Page 6 of 13   PageID #: 1124

up several rights, including:

a) the right to plead not guilty;
b) the right to a speedy and public trial by jury;
c) the right to assistance of counsel at trial;
d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;
e) the right to confront and cross-examine witnesses against the defendant;
f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and
g) the right not to testify and to have that choice not used against the defendant.

7. The defendant further agrees to cooperate completely and truthfully with any and all law enforcement agents and personnel of the United States Attorney's Office. This cooperation includes, but is not limited to, meeting with and being interviewed by such law enforcement agents or personnel of the United States Attorney's Office whenever requested. The defendant further agrees not to protect anyone who was truly involved and not to falsely implicate anyone who was not truly involved in the commission of criminal offenses. The defendant further agrees to testify completely and truthfully before a federal grand jury, at any trial, or at any other proceeding if called upon by the United States to do so. Upon request by the United States, the defendant must furnish all documents, objects and other evidence in the defendant's possession, custody or control that are relevant to the United State's inquiries. The defendant and defense counsel also knowingly, voluntarily, and intentionally waive the defendant's right (where applicable) to have defense counsel present during the course of cooperation, including questioning or court appearances.

8. To ensure the defendant's truthful cooperation, the United States agrees, except as provided below, not to use any self-incriminating information provided by the defendant pursuant to this written plea agreement against the defendant. However, nothing in

this plea agreement shall be applied to restrict the use of any information, (1) known to the United States prior to entering into this written plea agreement; (2) obtained from any other source; or (3) concerning the defendant's prior criminal record. Should any of the following occur (1) the defendant provides false or misleading information during the course of the defendant's cooperation; (2) defendant moves to withdraw the defendant's guilty plea; or (3) the defendant breaches any other terms of this plea agreement; then the United States may make use of any information provided by the defendant to law enforcement authorities at any time (including any information provided during formal or informal proffer sessions prior to signing this plea agreement, and any information provided after signing this plea agreement); for any purpose in any subsequent proceeding, including grand jury, trial, and sentencing phases of this case or in any other prosecutions or proceedings against the defendant or others. Moreover, if the United States determines at any time (before or after sentencing) that the defendant has failed to cooperate fully, completely, and truthfully, or otherwise violated any of the terms of this plea agreement, it will be free to withdraw any favorable sentencing motion filed by the United States (including motions under U.S.S.G § 5K1.1, and/or 18 U.S.C. § 3553).

9. At the time of sentencing, the United States may bring to the Court's attention the nature, extent, and value of the defendant's cooperation so that it may be considered in determining a fair and appropriate sentence under the facts of the case.

10. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a),

the United States agrees to move, at or before the time of sentencing, that the Court decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make statements that are inconsistent with accepting responsibility for the defendant's offense, including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

11. The defendant agrees to pay the special assessment in this case prior to sentencing.

12. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea. The defendant understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

13. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets

9

and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of Title 21, United States Code, Section 846 and/or 841(a)(1), and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees. The defendant further agrees to assist the United States fully in the identification, recovery and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

14. Financial Obligations. The defendant agrees to pay any fine and/or restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to

ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assests in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third part. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U. S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.
(b) The defendant expressly authorizes the U. S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.
(c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U. S. Attorney's Office to permit the U. S. Attorney's Office to obtain financial and tax records of the defendant.

15. (a) In consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant agrees not to file a direct appeal of the defendant's conviction or sentence except the defendant retains the right to appeal a sentence imposed above the sentencing guideline range or any applicable mandatory minimum sentence (whicever is greater) determined by the district court.

11

(b) In addition, the defendant knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the defendant's conviction and/or resulting sentence. The parties agree that the defendant retains the right to raise, by way of collateral review under § 2255, claims of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant by the time of the entry of judgment.

16. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including but not limited to failing to enter guilty plea as agreed herein, moving to withdraw guilty plea after entry), or by violating any court order or any local, state or federal law pending the resolution of this case, then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

17. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or

12

understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

James R. Dedrick
United States Attorney

3-4-10
Date

By: *[signature]*
Donald Wayne Taylor
Assistant United States Attorney

02/25/10
Date

*[signature]*
Ameka Brewer
Defendant

2/25/10
Date

*[signature]*
Donny M. Young
Attorney for Defendant